**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DEDE FULLER,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-08-1958-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Dede Fuller, which challenges the Social Security Administration's decision to deny benefits. (Dkt. # 21.) For the following reasons, the Court affirms the decision.[1]

**BACKGROUND**

On August 31, 1996, Plaintiff was injured in a car accident and began experiencing various symptoms. On February 8, 1999, Plaintiff applied for disability insurance, alleging

---

[1] The Court notes Plaintiff's failure to follow the page limitations set by Court order (Dkt. # 20) and Local Rule of Civil Procedure 16.1(d). "The opening . . . brief[] may not exceed seventeen (17) pages, exclusive of any statement of facts, with the reply brief limited to eleven (11) pages, except as approved by the Court upon motion." The Court granted Plaintiff a one-page extension for the opening brief, for a total of eighteen pages. (Dkt. # 20.) However, Plaintiff's opening brief is nineteen pages, and the reply brief is twelve pages, each exceeding the page limits by one page. Plaintiff's counsel is instructed to abide by the rules governing page limitations when filing future documents with the Court.

a disability onset date of November 28, 1996 based on muscle and bone pain in the spinal region, asthma and other respiratory issues, and psychological problems. (R. at 99–100, 161–63, 373–75.) Plaintiff's date last insured for disability insurance benefits was December 31, 1997, and thus Plaintiff must have been disabled on or before that date to receive full benefits. (*See* R. at 165.)

Plaintiff's claim was denied both initially and upon reconsideration. (R. at 101–04, 107–10, 377–87.) Plaintiff then attended a hearing before Administrative Law Judge Ronald Robins ("ALJ Robins") on January 10, 2001. (R. at 33.) After a second hearing was held on May 9, 2001, ALJ Robins issued a partially favorable decision on July 13, 2001, finding Plaintiff disabled only as of September 1, 2000. (R. at 59–70, 127–36.) The Appeals Council granted Plaintiff's request for review. (R. at 137–38, 145–47.) After another hearing, ALJ Robins issued an unfavorable decision on November 29, 2002, finding Plaintiff was never disabled. (R. at 23–31, 71–98.) Plaintiff appealed, and the Appeals Council denied the request. (R. at 9–11.) Plaintiff then filed an action with the District Court, which vacated ALJ Robins's decision and remanded for further proceedings. (R. at 463.)

ALJ Philip Moulaison then held two more hearings, one on June 21, 2005, and another on January 22, 2008. On March 12, 2008, ALJ Moulaison issued a partially favorable decision, finding Plaintiff disabled only as of February 1, 1999. (R. at 421–36.) The ALJ undertook the five-step sequential evaluation for determining whether Plaintiff was disabled. (R. at 428–35.) The five-step evaluation is as follows:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national

> economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

20 C.F.R. § 404.1520(a)(4) (2009); *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted). At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since November 28, 1996." (R. at 428.)

At step two, the ALJ found that, from November 28, 1996 to February 1, 1999, Plaintiff had the "following severe impairments: asthma, lumbar pain, and right hip pain." (R. at 428.) "Although anxiety, stress, and mood swings [were] mentioned in the treatment records," the ALJ found "the evidence [did] not establish a medically-determinable mental impairment during this time." (*Id.*) However, from February 1, 1999, the ALJ found Plaintiff had the "following severe impairments: asthma; cervicalgia, thoracic, and lumbar pain; right hip pain; chronic obstructive pulmonary disease; and mood disorder reactive to general medical condition." (R. at 429.)

At step three, the ALJ determined that, as of Plaintiff's alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

Next, the ALJ found that, prior to February 1, 1999, Plaintiff had the residual functional capacity ("RFC"), to "perform medium work as defined in 20 C.F.R. 404.1567(c)." (*Id.*) In an eight hour workday, Plaintiff could "sit for six hours" and "stand and/or walk for six hours." (*Id.*) She could also could "lift and/or carry and push and/or pull [twenty-five] pounds frequently and [fifty] pounds occasionally." (*Id.*) While she was "unable to climb ladders, ropes, or scaffolds," she was able to "occasionally climb ramps and stairs." (*Id.*) She could "frequently balance, stoop, kneel, crouch, and crawl," but she needed to avoid "even moderate exposure to fumes, odors, dusts, gases, poor ventilation" and "concentrated exposure to extreme cold." (*Id.*) Finally, "[s]he had no manipulative, communicative, or visual limitations." (*Id.*)

At step four, the ALJ found that, beginning February 1, 1999, Plaintiff's RFC had worsened such that she was "prevent[ed] from performing all substantial gainful activity." (R. at 432, 434.) The ALJ noted that, in an eight-hour day, Plaintiff could "sit for four hours . . . , stand for three hours . . . , and walk for one hour." (R. at 432.) She could "lift up to five pounds continuously, up to ten pounds frequently, and up to twenty-five pounds occasionally, and carry up to five pounds continuously and up to twenty pounds occasionally." (*Id.*) She could "use her hands for repetitive actions" and could "frequently bend, squat, crawl, climb, and reach." (*Id.*) Nonetheless, she was "totally restricted from activities involving unprotected heights, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases." (*Id.*) She also was "moderately restricted from activities involving being around moving machinery and driving automotive equipment." (*Id.*) She continued to experience "[r]ight hip pain, lung pain, fatigue, dizziness, and shortness of breath," all of which "severely affected [her] ability to function." (R. at 432–33.) As of May 2007, she also had occasional limitation in her right and left hands, and had "moderate difficulties in maintaining concentration, persistence, and pace." (R. at 433.)

Based on vocational expert testimony, the ALJ found that, prior to February 1, 1999, Plaintiff "was capable of performing her past relevant work" "as an accounts receivable supervisor as it is generally performed in the national economy." (R. at 434.) Conversely, beginning February 1, 1999, the ALJ found at step five that, "considering [Plaintiff's] age, education, work experience, and residual functioning capacity, there [were] not a significant number of jobs in the national economy that [Plaintiff] could perform." (R. at 435.)

Since the ALJ's decision ruled against her on the Title II Social Security disability claim (because her disability onset date was not on or before December 31, 1997, her date last insured), Plaintiff appealed to the Appeals Council. (R. at 392.) The Appeals Council declined jurisdiction. (R. at 388–90.) The ALJ's decision thus became the Commissioner's final decision for purposes of judicial review. (*Id.*)

1 | Plaintiff then filed the Complaint underlying this action on October 24, 2008, seeking this Court's review of the ALJ's denial of benefits.[2] (Dkt. # 24.) Plaintiff contends in her Opening Brief that the ALJ "failed to properly consider the medical evidence of record, weigh medical source opinion evidence, assess the credibility of [Plaintiff's] subjective complaint testimony," and analyze vocational consultant testimony. (Dkt. # 21.) The Court reviews only the challenged portion of the ALJ's decision—the period before February 1, 1999.

**DISCUSSION**

**I.  Standard of Review**

A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may "set aside a denial of disability benefits only if that denial is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the

---

[2] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (allowing "[a]ny individual" to "obtain a review . . . by a civil action" of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party").

- 5 -

ALJ's . . . decision based on evidence the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate or improper, the court is powerless to affirm the administrative action").

## II. Analysis

Plaintiff asserts the ALJ failed to properly consider and weigh medical and opinion evidence in making his RFC assessment. RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996). In making an RFC assessment, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* The ALJ also must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

### A. Physician Testimony

The ALJ did not commit legal error in considering the opinions of Dr. Abarikwu, Plaintiff's treating physician, or of Drs. Bush and Cunningham about Plaintiff's restrictions and limitations. *See* 20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). If a treating doctor's opinion is not contradicted by another doctor," the ALJ may reject for "'clear and convincing' reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). If another doctor counters the treating physician's opinion, "the ALJ may not reject this opinion without

- 6 -

providing 'specific and legitimate reasons' supported by substantial evidence in the record."[3] *Id.* (citing *Lester*, 81 F.3d at 830). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted). "The ALJ must set forth [his or her] own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 632.

In making this analysis, a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). If the opinion is not well-supported by such techniques or is inconsistent with other substantial evidence in the record, then the ALJ should consider several factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability by explanation and reference to relevant evidence, (4) consistency with the record as a whole, (5) specialization, and (6) any other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d); 20 C.F.R.§ 416.927(d).

In this case, Dr. Abarikwu issued multiple opinions regarding Plaintiff's ability to sit, stand, walk, lift, breath, and otherwise function in a work environment. (R. at 285–86, 333–34, 351–52, 369, 491–92.) Plaintiff points to a summary opinion issued after the disability date, in which Dr. Abarikwu found the following: Plaintiff could, in an eight-hour day, sit for four hours, stand for three hours, and walk for one hour; she could, at one time, sit for two hours, stand for one hour, and struggle to walk; she could never lift over twenty-

---

[3] When a non-treating physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the non-treating physician's opinion is not substantial evidence on its own. *See Orn*, 495 F.3d at 632. If, however, the non-treating physician makes independent findings, then those independent findings are substantial evidence. *Id.* Nonetheless, the "substantial evidence" threshold necessary to reject the opinion of a treating physician can be reached by the opinion of even a non-examining physician in concert with an abundance of evidence in the record. *See Lester*, 81 F.3d at 831.

- 7 -

five pounds and could never carry over twenty pounds; she could use her hands and feet for repetitive actions; she could frequently bend, squat, crawl, climb, and reach; she had total restriction from unprotected heights, exposure to marked temperature and humidity changes, and exposure to dust, fumes, and gases; she had moderate restriction from moving machinery and automotive equipment; she was also severely limited by pain, fatigue, dizziness, and shortness of breath. (R. at 333–34.) Dr. Abarikwu asserted that these restrictions existed prior to December 1997, although, as discussed below, not all of Dr. Abarikwu's treatment records supported such an opinion. Plaintiff further contends that, if these restrictions were true, they would preclude Plaintiff from performing any work.[4]

For the period prior to February 1, 1999, the ALJ rejected Dr. Abarikwu's opinions regarding Plaintiff's restrictions and limitations. The ALJ found Plaintiff had the RFC to perform medium work during that time. For example, contrary to Dr. Abarikwu's findings, the ALJ noted that Plaintiff could sit, stand, and/or walk for six hours (not four, three, and one hour, respectively). (R. at 429.) The ALJ also found Plaintiff could lift, carry, push, or pull twenty-five pounds frequently and fifty pounds occasionally (Dr. Abarikwu found Plaintiff could never lift over twenty-five pounds and could never carry over twenty pounds). (*Id.*)

Because Dr. Abarikwu's opinion was controverted by non-treating physician opinions, the ALJ must have given specific and legitimate reasons supported by substantial evidence

---

[4]

In response to the ALJ's questions, the vocational consultant opined the following:
    Q:    Next hypothetical . . . Individual suffers from pain in the right hip, fatigue and dizziness and shortness of breath. . . . [T]he ability to function would be in the severe category with regard to asthma. Does that – individual have severe shortness of breath with minimal activity limiting daily function, seriously affects individual's ability to function daily activities or work duties. Does that change your last answer?
    A:    Yes.
    Q:    In what way?
    A:    There would be no work. (R. at 82–86)

in the record for rejecting Dr. Abarikwu's opinions. *See Orn*, 495 F.3d at 632; *Lester*, 81 F.3d at 830; *Embrey*, 849 F.2d at 421. The ALJ has done so.

Throughout the opinion, the ALJ lists factual findings based on all the evidence in the record, including that offered by Dr. Abarikwu. These facts provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Abarikwu's opinions because her opinion is inconsistent with the other substantial evidence in the record. Furthermore, considering the factors in 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ did not err in giving Dr. Abarikwu's opinion little weight for the period prior to February 1, 1999. Although Plaintiff notes various parts of the record suggesting that her Plaintiff's pain and respiratory problems were serious, the ALJ found that both other evidence in the record and Dr. Abarikwu's own opinions contradicted a finding of disability.

Plaintiff alleges disability based on three causes, muscle and bone pain, respiratory problems, and psychological problems. For each of these causes, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for why the ALJ accepted or rejected each physician's opinion. As to the ALJ's delineation date of February 1, 1999, it appears the ALJ found evidence supported Plaintiff's disability (as to asthma) on that date, but not before. As to spinal pain and mental condition, the ALJ cites evidence that these problems became disabling at some point, but clearly not before February 1, 1999.

### 1. Asthma and Other Respiratory Problems

The ALJ gave specific and legitimate reasons for accepting and rejecting particular parts of each physician's testimony and for making his ultimate finding that Plaintiff became disabled only on February 1, 1999. First, the ALJ cited a November 1996 emergency room report describing that Plaintiff had not had "any problem with [her history of asthma] for many, many years" and that her "chest x-ray was negative." (R. at 431.) Moreover, although Plaintiff was hospitalized for asthma from January 28 to February 1, 1997, she received treatment and showed "marked improvement in her pulmonary function test results." (*Id.*) Moreover, while Dr. Abarikwu's summary opinion ultimately concluded Plaintiff was disabled, her own records actually support the ALJ's conclusion. While the ALJ did not

point-by-point address every assertion Dr. Abarikwu made, the opinion and record show specific and legitimate reasons for not finding a disability. *See Connett v. Barhart*, 340 F.3d 871, 875 (9th Cir. 2003) (finding ALJ did not err by discounting treating physician's conclusions that were not supported by his own treatment notes or other evidence in the record). In March 1997, Plaintiff saw Dr. Abarikwu for "seasonal allergies" and "*intermittent* wheezing, runny nose, and congestion during the season." (*Id.*) (emphasis added). Dr. Abarikwu also reported Plaintiff's lungs were "diffusely clear with no crackles or wheezing." (*Id.*) In November 1998, after not examining Plaintiff for close to a year, Dr. Abarikwu noted that Plaintiff's asthma was worsening, but she also explained that Plaintiff used medication and had a "fairly good" energy level. (*Id.*) During this time, therefore, the ALJ had specific and legitimate reasons for weighing physician testimony and concluding that Plaintiff did not have disabling asthma; the respiratory evidence available showed either that Plaintiff responded to treatment or that her problems were minor or merely allergy-related.

It was not until July 8, 1999, after the date of disability, that Dr. Abarikwu first mentioned disabling asthma. (R. at 433.) In fact, asthma is the only potential cause of disability that medical records could show started even close to February 1999—as discussed below, Plaintiff's spinal pain and mental condition could not have been disabled until *much* after February 1999. But as for asthma, it is reasonable that the ALJ could set the disability date on February 1, 1999 given that, in November 1998, Plaintiff's asthma was worsening, but not debilitating, but that in July 1999, Dr. Abarikwu found Plaintiff's asthma disabling.

For example, in December 1999, Dr. Cunningham issued an opinion that Plaintiff's "subjective complaints outweighed objective findings."[5] (R. at 431.) The ALJ gave Dr.

---

[5] The ALJ also noted that, in November 1999, Plaintiff reported she "took good care of her personal hygiene and grooming, prepared meals, did household cleaning and laundry, . . . grocery shopped . . . [,] worked on her computer, watched movies and television, and read." (R. at 432.) Contrary to Plaintiff's assertion, this report does not mean she was disabled prior to February 1, 1999. Although the ALJ discussed this report to show Plaintiff's symptoms were not disabling before February 1999, the ALJ *could have* used this

Cunningham's report significant weight only *before* February 1, 1999 because it was consistent with the other evidence of record for that time (as to asthma). (*Id.*) Plaintiff incorrectly argues that the ALJ was inconsistent for two reasons: (1) the ALJ accepted Dr. Cunningham's opinion for the period prior to February 1, 1999, while he rejected the opinion for the period after that date, and (2) the ALJ accepted Dr. Cunningham's opinion even though he authored it in December 1999, after the date of disability. This, however, does not indicate any inconsistency as the ALJ clearly stated that Dr. Cunningham's opinion had significant weight *only* for the period prior to February 1, 1999 (regardless of when the report was written) because other parts of the record supported it for that time.

In February 2000, Dr. Bush opined that Plaintiff had the "[RFC] for medium work." (*Id.*) The ALJ gave this opinion significant weight only *before* February 1, 1999 because it was "consistent with the evidence of record for that time period, which shows that [Plaintiff's] motor vehicle accident injuries responded to treatment by Dr. Pomeroy, and that when she used her medications, her asthma did not cause significant problems in her ability to function."[6] (R. at 431–32.)

---

evidence to show Plaintiff was not disabled until November 1999. The ALJ did not err; rather, she appears to have given Plaintiff the benefit of the doubt.

[6] Plaintiff also contends the ALJ improperly credited Dr. Bush's opinion because the ALJ, while adopting Dr. Bush's opinion for the period up to February 1999, also implicitly rejected Dr. Bush's opinion for the period beginning February 1999 by making factual findings contrary to Dr. Bush's February 2000 reports. The ALJ found Plaintiff had considerably less physical ability beginning in February 1999 than Dr. Bush had reported. (R. at 273–80, 432.) In essence, Plaintiff argues that because the ALJ did not accept Dr. Bush's opinion for every year, the ALJ must reject Dr. Bush entirely. This is not a reason to reject the ALJ's opinion. Plaintiff does not cite any authority holding that an ALJ must find a physician entirely credible or entirely not credible, rather than being able to weigh each opinion (for each time period) a physician has against the other evidence in the record.

Plaintiff makes a similar assertion regarding Dr. Cunningham, but the Court rejects this argument for the same reason. To the contrary, the ALJ gave specific and legitimate reasons why each physician's opinion was accepted or rejected for each relevant time period.

- 11 -

Plaintiff cites to Dr. Abarikwu's summary opinion dated *after* the disability date and points to other parts of the record suggesting her disability, but this is fundamentally a question of weighing evidence credibility—the ALJ's province. The ALJ gave specific and legitimate reasons for accepting Dr. Bush's and Dr. Cunningham's conclusions, rather than Dr. Abarikwu's, for the period prior to February 1, 1999.[7]

### 2. Muscle and Bone Pain

Plaintiff asserts she suffers from spinal muscle and bone pain resulting from an August 1996 motor vehicle accident. The ALJ noted multiple parts of the record showing her pain was not disabling prior to February 1, 1999. In September 1996, Dr. Pomeroy, another treating physician, reported that Plaintiff had somatic dysfunction in the lumbar spine and other damage from the automobile accident. (R. at 431.) But only five months later, in February 1997, Dr. Pomeroy found that her condition "had improved" through osteopathic manipulation and injections. (*Id.*) Consistent with this improvement, even Dr. Abariwku found in March 1997 that Plaintiff exercised "aggressively" to lose weight, and in November 1998, Dr. Abarikwu reported Plaintiff's energy level was "fairly good." (R. at 432.) While the ALJ did not point-by-point address every assertion Dr. Abarikwu made, the opinion and record show specific and legitimate reasons for not finding a disability. *See Connett*, 340 F.3d at 875 (discounting treating physician's conclusions for lack of support in own treatment notes). Plaintiff's spinal pain was improving and not serious enough to prevent Plaintiff from aggressively exercising or having good energy.

---

[7] Defendants also note several arguments not directly cited by the ALJ. The Court does not address these arguments, however, because the Court may affirm only based on evidence the ALJ actually discussed. *See Burlington*, 371 U.S. at 169; *Chenery Corp.*, 332 U.S. at 196; *Connett*, 340 F.3d at 874; *Pinto*, 249 F.3d at 847–48. For example, Defendant points out that Dr. Abarikwu saw Plaintiff only five times between November 1996 and November 1998 and that Dr. Abarikwu rendered her opinion of Plaintiff's limitations in 2001, four years after the purported onset date of 1997. The ALJ, however, addressed neither of these arguments.

There was no basis in the record for a finding of disability before February 1, 1999. Although Plaintiff's asthma may have been disabling on that date, it was not until *much* later that any facts suggest her muscle and bone pain became disabling.

The ALJ credited Dr. Bush's opinion that Plaintiff had a medium RFC and Dr. Cunningham's opinion that Plaintiff's subjective complaints outweighed objective evidence, but the ALJ credited these opinions only before February 1, 1999 because they were consistent with the record for that time period. (R. at 431–32.)

The first clear evidence of spinal disability was after 1999. The ALJ cited a 2007 report by Dr. Smith, which found that Plaintiff had "cervicalgia with marked decrease in range of motion," "thoracic and lumbar pain with marked decrease in range of motion with minimal decrease in proximal muscle strength," "right hip pain with minimal limitation in range of motion in both right and left hips," and "chronic obstructive pulmonary disease with normal pulmonary examination." (R. at 433.) Thus, the ALJ gave specific and legitimate reasons for her decision to reject and accept certain physician opinion analysis regarding muscle and bone pain. The ALJ explained how the record, including Plaintiff's examining *and* treating physicians, supported a finding of disability only after February 1, 1999.

### 3. Mental Condition

The last possible source of disability is Plaintiff's mental condition. It is unclear from Plaintiff's briefs whether she maintains this as a possible cause of disability, but, in any event, the ALJ explained why he weighed physician testimony and found Plaintiff not disabled due to a mental condition prior to February 1, 1999. In March 1997, Plaintiff reported stress and anxiety, and she saw a counselor for psychosocial stress prior to February 1, 1999. (R. at 431.) In October 1997, however, Dr. Abarikwu attributed Plaintiff's mood swings only to perimenopausal symptoms, and the ALJ explained that no evidence showed Plaintiff had "significant limitations in her ability to function mentally for any 12-month period." (*Id.*) The ALJ also gave Dr. Jasinski's opinion that Plaintiff "had no limitation with regard to social functioning and reliability . . . significant weight because it is consistent with the record as a whole." (R. at 432.) Although Dr. Jasinski opined in 2005 that, prior to 2001,

Plaintiff possibly suffered depression or irritability secondary to her physical ailments, he "saw no indication . . . that [Plaintiff] had experienced any problems regarding social functioning," cooperation, or reliability. (R. at 429.) Finally, the ALJ explained that Plaintiff maintained normal daily activities through November 1999.[8] (R. at 432.) These included personal hygiene, grooming, meal preparation, cleaning, laundry, shopping, computer-, movie-, and television-watching, and reading. (*Id.*) These activities do not suggest mental social functioning problems.

However, the record supports a finding of disability sometime after the disability date. In March 2001, Dr. Morton reported that Plaintiff had a "probable depressive disorder NOS" and that she "had limitations in her ability to do work-related mental activities." (R. at 433.) The ALJ found Dr. Morton's opinion was "consistent with his evaluation, which showed that [Plaintiff] struggled with tasks requiring attention/concentration." (R. at 434.) Additionally, Dr. Oas reported in May 2007 that he would "consider a diagnosis of somatoform pain disorder caused by psychological and medical factors, and possibly a personality disorder." (R. at 433.) But "with regard to [Plaintiff's] ability to do work-related mental activities," the ALJ gave Dr. Oas's opinion "little weight because it is inconsistent with the record as a whole, which shows moderate difficulties in concentration, persistence, and pace, and no difficulties in social functioning." (R. at 434.) For these reasons, Plaintiff has not shown that physician testimony establishes disability based on her mental condition.

### B. Plaintiff's Subjective Complaint Testimony

Plaintiff contends the ALJ improperly weighed her subjective complaint testimony. In considering a claimant's credibility, the claimant must "produce objective medical evidence of an impairment or impairments" and "show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996). "[U]nless an ALJ

---

[8] As explained in footnote 5, the fact that she maintained daily activities beyond the disability date does not mean the ALJ erred in finding her disabled in February 1999.

makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may consider "at least" the following factors when weighing the claimant's credibility:

> [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958. The ALJ meets this standard by providing a "narrative discussion" containing "specific reasons for [his] finding" that are "supported by the evidence in the case record." *Robbins*, 466 F.3d at 884 (quoting S.S.R. 96-7p (July 2, 1996)).

Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce some symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible prior to February 1, 1999. (R. at 432.) The ALJ gave four main reasons for this finding, (*id.*), which, as a whole, provide specific, clear and convincing reasons for rejecting Plaintiff's testimony.

First, the ALJ rejected Plaintiff's complaints about lower back and pelvic pain because Dr. Abarikwu's medical records showed she "aggressively exercised" to lose weight. (*Id.*) The ALJ explained this showed "that her pain was not severe enough to prevent her from being able to engage in this activity."[9] (*Id.*) As explained above in Section II-A-2, this is

---

[9] Plaintiff argues the treatment note said she "reg[ularly]" exercised, as opposed to "aggressively" exercised. This is incorrect, as the record uses both "reg[ularly]" and

- 15 -

consistent with the other evidence, including Dr. Abarikwu's records, that Plaintiff's spinal pain resulting from the August 1996 car accident was not disabling prior to February 1, 1999. For example, Dr. Pomeroy opined in February 1997 that Plaintiff's condition "had improved" through treatment, and Dr. Abarikwu noted in November 1998 that Plaintiff's energy level was "fairly good." (R. at 431–32.) Conversely, just as with the physician opinions, the ALJ found Plaintiff's testimony credible after February 1, 1999 because it was consistent with the record. For example, the ALJ gave Dr. Cunningham's December 1999 opinion that Plaintiff's subjective complaints outweighed objective findings significant weight only before February 1, 1999. The ALJ likewise gave significant weight to Dr. Bush's February 2000 opinion that Plaintiff had an RFC for medium work, but only for the time prior to the disability date. (R. at 431–32.) And the ALJ found Dr. Smith's May 2007 report regarding Plaintiff's restricted range of motion, muscle strength, and pulmonary ability credible for the period after February 1, 1999. (R. at 433.) Thus, the ALJ properly rejected Plaintiff's subjective testimony regarding back pain.

Second, the ALJ noted that when Dr. Abarikwu treated Plaintiff for seasonal allergies, her records showed that respiratory issues were only "intermittent," and thus not disabling; the ALJ also explained that even Dr. Abariwku did not find Plaintiff's asthma disabling until July 8, 1999. (R. at 432.) Plaintiff points to treatment notes stating that she had experienced weight gain and various respiratory symptoms. (R. at 215–32, 233–37, 249, 253–57, 291.) The ALJ, however, explained that Plaintiff's respiratory symptoms, even if they existed, were only intermittent and not disabling. (R. at 432.) Moreover, as discussed in Section II-A-1, the ALJ cited other parts of the record that negated Plaintiff's testimony. The November 1996 emergency room report stated that Plaintiff had not had any problems with asthma for many years and that her chest x-ray was negative. (R. at 431.) In early 1997, Plaintiff also showed improvement in pulmonary function tests as a result of treatment, and it is well-established that an ALJ may rely on evidence that a claimant responds well to treatment to

---

"aggressively." (R. at 253.)

indicate that her subjective complaints are not entirely credible. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (relying upon the fact that a claimant "responded well to treatment" in affirming the ALJ's adverse credibility finding). Only on July 8, 1999 did any physician find Plaintiff's asthma disabling; only at this point did the record justify rejecting Drs. Bush and Cuningham's opinions in favor of Plaintiff's subjective testimony. (*See* R. at 433.)

Third, the ALJ found that "although stress, anxiety, and mood swings were noted," Dr. Abarikwu and medical records described them "as social stresses and probable perimenopausal mood swing symptoms." (R. at 432.) Moreover, there was "no evidence that she had significant limitations in her ability to function." (*Id.*) Plaintiff contends that she never alleged "significant limitations" from anxiety and mood swings, but rather only that she alleged suffering due to pain and asthma. Nevertheless, Plaintiff testified at the January 2001 hearing that she experienced depression. (R. at 43, 55.) It is unclear why Plaintiff's argument is helpful to her case. Plaintiff's argument does not negate the ALJ's finding that Plaintiff suffered no disability from psychological problems. Even so, as described in Section II-A-3, the ALJ explained why the record negated Plaintiff's testimony before February 1, 1999, but supported her testimony after that date. For example, Plaintiff reported only psychosocial stress in March 1997, and in October 1997, Dr. Abarikwu attributed Plaintiff's mood swings to perimenopausal symptoms. (R. at 431.) Prior to the disability date, the ALJ found no evidence of significant mental limitations. (*Id.*) Dr. Jasinski likewise explained Plaintiff's psychological issues as merely secondary to her physical ailments, without any loss of social functioning. (R. at 429.) Only after February 1, 1999 did Plaintiff show mental conditions that were consistent with her subjective testimony. The record then included Dr. Morton's March 2001 report about Plaintiff's depressive disorder and limitations in mental activities. (R. at 433.) The ALJ also discussed Dr. Oas's May 2007 report and concluded Plaintiff had moderate difficulties in concentration, persistence, and pace. (*Id.*)

Fourth, the ALJ noted Plaintiff maintained many normal daily activities, such as care for personal hygiene, grooming, meal preparation, cleaning, errands, computer-use, movie and television-watching, and reading. (*Id.*) While none of these activities is dispositive and Plaintiff need not be completely incapacitated, it is relevant evidence in assessing whether Plaintiff's symptoms were as severe and disabling as she claimed. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (discounting claimant's testimony where, in conjunction with other contradictions in her testimony, she had an active lifestyle, including cleaning, cooking, walking dogs, and driving to appointments). Here, the numerous daily activities of many types suggest Plaintiff retained at least some capacity to work.

Plaintiff points out that the medical records show she did these daily activities in November 1999, even though the ALJ found that, by that time, she was disabled. (R. 205–08.) In other words, the ALJ implicitly found these activities consistent with disability in November 1999, but inconsistent prior to February 1999. (R. at 432.) This is not a meaningful inconsistency. These numerous daily activities show Plaintiff's subjective symptom testimony was not reliable *at least* until February 1999. That the ALJ also could have rejected Plaintiff's testimony until November 1999 for the same reason is not reversible error; the ALJ appears to have given Plaintiff the benefit of the doubt by finding her disabled in February, rather than in November of 1999.

For the preceding four reasons, which include Plaintiff's own statements and evidence by both treating and non-treating physicians, the ALJ gave specific and persuasive reasons for finding Plaintiff's testimony uncredible.

### C. Plaintiff's Capability To Perform Her Past Work

At step four, claimant is not disabled if she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job or the functional demands and duties of the occupation as it is generally performed in the national economy. *See* S.S.R. 82-61 (August 20, 1980). The ALJ found that, prior to February 1999, Plaintiff could have performed her past relevant work as an accounts receivable supervisor as it is

generally performed in the national economy. (R. at 434.) Mr. Bluth, the vocational expert, in response to the ALJ's hypothetical question, testified Plaintiff could perform her past relevant work.[10] (R. at 82.)

Plaintiff contends the vocational consultant's testimony lacked probative value because the ALJ's hypothetical question did not include relevant limitations as stated by Dr. Abarikwu and the Plaintiff herself. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (finding a vocational expert's response to a hypothetical question constitutes substantial evidence only if the question accurately portrays the claimant's individual physical and mental impairments). The ALJ's hypothetical question, however, need not state limitations that are unsupported by the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). As discussed above, the ALJ's findings are free are legal error and supported by substantial evidence; thus, the hypothetical question does not improperly exclude any limitations.

Plaintiff next contends that Mr. Bluth's testimony lacks probative value because Dr. Bluth contradicted his own testimony. Plaintiff is incorrect. After Dr. Bluth testified that Plaintiff could hypothetically perform her past work, Plaintiff's counsel asked Dr. Bluth, "[I]f an individual needed to avoid moderate exposure to dust, fumes and gases, *but that* [] *moderate was defined* to include prolonged subjectivity to smells such as perfumes or office

---

[10] The hypothetical stated the following:
"college courses, no degree - - with a work history similar to the claimant with the following limitations. Individual could occasionally lift about fifty pounds, frequently lift about twenty-five pounds . . . stand and/or walk about six hours in an eight hour day, sit about six hours. . . unlimited with regard to pushing and pulling of hand or food controls . . . unable to climb ladders, ropes, and scaffolds, could occasionally climb . . . ramps and stairs, frequently balance, frequently stoop, frequently kneel, frequently crouch, frequently crawl . . . needs to avoid concentrated exposure to extreme cold and avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, etc. Such an individual be able to perform any of the past relevant work of the claimant?"

dust, would that then preclude the job of supervisor?" (R. at 88–89) (emphasis added). Dr. Bluth answered affirmatively. However, the ALJ never made a finding that "moderate" included "prolonged exposure to perfumes or office dust," and Plaintiff does not cite to any part of the record showing this specific limitation. Dr. Bluth, therefore, did not contradict his own testimony because he was simply responding to a different hypothetical posed by Plaintiff's counsel. Therefore,

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this matter.

DATED this 5th day of November, 2009.

_____
G. Murray Snow
United States District Judge